Filed 6/4/24  P. v. Jaimez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL HENRY JAIMEZ,<br><br>　　Defendant and Appellant. | B327503<br><br>(Los Angeles County<br>Super. Ct. No. VA091996) |

　　APPEAL from an order of the Superior Court of Los Angeles County, Raul Anthony Sahagun, Judge.  Affirmed.

　　James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Michael Henry Jaimez appeals from the trial court's denial of his petition for resentencing under Penal Code section 1172.6[1] (former § 1170.95).[2]  Because defendant is ineligible for section 1172.6 relief as a matter of law, we affirm.

## FACTS[3] AND PROCEDURAL BACKGROUND

In August 2005, defendant went to a convenience store with Michael J. Salinas (Salinas).  Defendant, visibly armed with a gun, stopped a car from leaving the parking lot.  Defendant beckoned Salinas to join him, and they engaged in a brief conversation before Salinas approached the car with his own gun

---

[1]     All further references are to the Penal Code unless otherwise indicated.

[2]     Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) For simplicity, we refer to the section by its new numbering.

[3]     Both parties' briefs refer to the factual summary in our opinion deciding defendant's direct appeal (*People v. Jaimez* (June 9, 2009, B198897) [nonpub. opn.] (*Jaimez*)) as an accurate reflection of material in the record of conviction.  However, in his reply brief, defendant suggests that we may not refer to our prior factual summary when evaluating his present appeal.  (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1169–1170, 1183–1184 (*Lee*).)  In an abundance of caution, and on our own motion, we therefore take judicial notice of the record in the prior appeal (*Jaimez, supra*, B198897), "which is appropriate to review in deciding whether a defendant has filed a facially sufficient [section 1172.6] petition." (*People v. Burns* (2023) 95 Cal.App.5th 862, 865, fn. 3 (*Burns*) [citing *People v. Lewis* (2021) 11 Cal.5th 952, 970] (*Lewis*)].)  This factual background is taken from that record.

2

drawn. Upon reaching the car, Salinas shot the driver in the face.

Two passengers in the car immediately got out and took off running. One of them heard roughly five to seven additional shots fired as they fled the scene. He heard bullets whizzing past him, and thought that at least three of the gunshots were fired in the open (as opposed to being fired at or in the car). A security guard working nearby also heard more gunshots fired shortly after the initial shot.

In 2007, a jury convicted defendant and Salinas of, inter alia, one count of murder and two counts of attempted murder. The jury specifically found that defendant committed both counts of attempted murder willfully, deliberately, and with premeditation. The trial court sentenced defendant to a total of 32 years to life. (*Jaimez*, *supra*, B198897 at p. 2.)

Fifteen years later, defendant filed a petition for resentencing pursuant to section 1172.6. The prosecution opposed the petition. Defendant's appointed counsel did not file a written response.

In December 2022, the trial court, relying on our prior appellate opinion (see *Jaimez*, *supra*, B198897), found that defendant was convicted as an aider and abettor and was thus ineligible for resentencing relief.[4] Accordingly, the court denied defendant's petition.

---

[4]    Defendant argues that the trial court erred by relying on the factual summary in *Jaimez*, *supra*, B198897, at the prima facie hearing. (See e.g., *Lee*, *supra*, 95 Cal.App.5th at pp. 1169–1170, 1183–1184.) Assuming arguendo that the trial court did so err, we find that the error was harmless (*People v. Myles* (2021) 69 Cal.App.5th 688, 706 [harmless error standard applies to the trial court's erroneous consideration of evidence during section

Defendant timely appealed.

## DISCUSSION

### I.    Applicable Law

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  Among other things, the bill amended section 188 to require that, when the felony-murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

"Section 1172.6 provides a mechanism whereby people 'who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court.' [Citation.]" (*People v. Arnold* (2023) 93 Cal.App.5th 376, 382.)  As of January 2022, section 1172.6 also extends to individuals convicted of "attempted murder under the natural and probable consequences doctrine."

---

1172.6 proceedings]); having reviewed the record of conviction, we conclude that it is not "reasonably probable that [defendant] would have received a more favorable result . . . had the error not occurred" (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447).

4

(§ 1172.6, subd. (a); *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

In order to obtain resentencing relief, a defendant must first allege that an information was filed against him allowing the prosecution to proceed under either (1) a theory of murder under the felony murder rule, the natural and probable consequences doctrine, or any "other theory under which malice is imputed to a person based solely on that person's participation in a crime[,]" and/or (2) a theory of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a)(1).) The defendant must also allege that he was convicted of murder or attempted murder (§ 1172.6, subd. (a)(2)), and that he could not now be convicted "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

Upon the filing of a properly pleaded petition for resentencing, the trial court must appoint counsel if requested, and then conduct a prima facie analysis to determine the defendant's eligibility for relief. (§ 1172.6, subds. (b)(3) & (c); *Lewis*, *supra*, 11 Cal.5th at pp. 957, 960; *People v. Strong* (2022) 13 Cal.5th 698, 708.) "[T]he prima facie inquiry . . . is limited . . . "'[T]he court takes [a] [defendant]'s factual allegations as true and makes a preliminary assessment regarding whether the [defendant] would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause"'" and set the matter for an evidentiary hearing. (*Lewis*, *supra,* at p. 971.)

In making its assessment, the trial court may consider the defendant's record of conviction. (*Lewis*, *supra*, 11 Cal.5th at pp. 970–971.) As our Supreme Court explained in *Lewis*, "[t]he record of conviction will necessarily inform the trial court's prima

5

facie inquiry . . . allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, at p. 971.) However, "the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Id.* at p. 953; *Flores*, *supra*, 76 Cal.App.5th at p. 991.)

## II.   Standard of Review

We review de novo the trial court's denial of a section 1172.6 petition at the prima facie stage. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545 (*Coley*).)

## III.   Analysis

Defendant argues that his petition merits an evidentiary hearing, claiming that his murder and attempted murder convictions could have been secured under now invalid theories of liability. The record of conviction belies these claims.

As defendant notes in his opening brief, "[t]he record of his convictions unquestionably confirms that [he] was convicted as an aider and abettor to Salinas's commissions of the shootings that underly the commissions of the" crimes for which he was convicted.[5] It is well settled that direct aiding and abetting remains a viable theory of murder liability, "because a direct aider and abettor to murder must possess malice aforethought."[6]

---

[5]   Although both the murder and the attempted murders were committed via gunshot, the jury found that defendant did not personally discharge a firearm, indicating that defendant was convicted for aiding and abetting the shooter.

[6]   The jury instructions given at defendant's trial reflect this intent requirement. (CALJIC No. 3.01 ["[A] person aids and abets the commission or attempted commission of a crime when he . . . [¶] . . . [¶] [w]ith the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or

(*People v. Gentile* (2020) 10 Cal.5th 830, 848; see also *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 (*McCoy*) [an "aider and abettor must know and share the murderous intent of the actual perpetrator"].)

Moreover, the jury that convicted defendant was not instructed on felony murder, the natural and probable consequences doctrine, or any theory of liability relying on imputed malice. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205 [a petitioner is ineligible for section 1172.6 relief as a matter of law if the jury instructions show that jurors were not instructed on any theory of liability for murder that allowed malice to be imputed to the defendant].)

On the attempted murder charges, the trial court instructed that defendant must have "harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." (CALJIC No. 8.66; see also *McCoy*, *supra*, 25 Cal.4th at p. 1118 [a defendant who is guilty of attempted murder under a direct aiding and abetting theory must have the specific intent to kill].) Furthermore, the jury found that the attempted murders were "willful[], deliberate[], and premeditat[ed]." To do so, the jury must have concluded that "the attempted murder[s] w[ere] preceded and accompanied by a clear, deliberate intent to kill." (CALJIC No. 8.67.) These instructions, together with the absence of any guidance on the natural and probable consequences doctrine, conclusively establish that defendant's attempted murder convictions were not secured under that now invalid doctrine. (§ 1172.6, subd. (a)(1).)

---

advice aids, promotes, encourages or instigates the commission of the crime"].)

7

As to the murder charge, defendant "was convicted . . . based on his aiding and abetting of the same shooting that gave rise to the attempted murder conviction[s]. . . . [B]y finding [defendant] guilty of attempted murder" under an express malice theory, "the jury necessarily found he had personally harbored . . . express malice when he aided and abetted the . . . [immediately preceding] murder."[7] (*Coley*, *supra*, 77 Cal.App.5th at p. 547.)

On this record of conviction, defendant cannot show that he was convicted of murder under any "theory under which malice is imputed to a person based solely on that person's participation in a crime," or of attempted murder under the natural and probable consequences doctrine. (§ 1172.6, subd. (a)(1).) Nor can he demonstrate that he could no longer be convicted of murder "because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3)). Therefore, defendant is ineligible for relief as a matter of law, and the trial court correctly denied his resentencing petition.

---

[7] Defendant claims that a court cannot consider whether the murder and attempted murder arose from the same incident without engaging in the type of intensive factfinding that is prohibited at the prima facie stage of the section 1172.6 petitioning process. He cites no authority for the proposition that relying on an undisputed fact readily available in the record of conviction amounts to "'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 974.) And, despite defendant's subsequent protestations that "[t]he underlying facts do not indicate a single uninterrupted shooting transaction[,]" in his opening brief defendant conceded that the murder and attempted murders "occurred during a single encounter with the three victims."

Defendant raises three arguments to the contrary, all of which are unavailing. First, with respect to his murder conviction, he points out that the jury was instructed on the lying in wait theory of murder, which reads in pertinent part: "Murder which is immediately preceded by lying in wait is murder of the first degree." (CALJIC No. 8.25.) Defendant argues that "the application of a lying-in-wait theory for first-degree murder allows the jur[y] to find an aider and abettor guilty . . . based upon an imputed implied malice theory in which they do not necessarily have to determine [whether] the aider and abettor's [*sic*] personally held malice aforethought[.]" But this argument ignores that defendant was convicted on a theory of express, not implied, malice.[8]

Defendant's reliance on *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*), is misplaced for the same reason. The *Maldonado* court held that the lying-in-wait instruction could allow a jury to impute malice to a person convicted of aiding and abetting *implied malice* murder, because the lying-in-wait instruction arguably requires neither the perpetrator nor the aider and abettor to intend to kill or to consciously disregard any risk to human life. (*Maldonado*, *supra*, 87 Cal.App.5th at p. 1266 ["The murder by lying in wait

---

[8] The prosecution's closing argument at the 2007 trial underscores that both defendant and Salinas were convicted on a theory of express malice: "The killing was unlawful, done with malice aforethought. The judge [instructed on] malice aforethought. Means either express or implied. Express is an intent to kill a human being. . . . This is express. Salinas pointed the gun to the side of [the victim's] head and killed [him]." The prosecution did not argue that either codefendant harbored implied malice.

9

instruction did not instruct the jury that the perpetrator needed to intend to cause death. . . . [T]he jury may have found the perpetrator's *purpose* was only to injure or intimidate the victim in a surprise attack. Thus . . . the jury could have construed the instructions such that, 'to be guilty as an aider and abettor of [lying in wait first degree] murder, [an] appellant need only have intended to encourage the perpetrator's intentional act—in this case, [a surprise attack on the victim]—whether or not [the] appellant intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing'"].) This reasoning does not apply to defendant's conviction for aiding and abetting an *express malice* murder, which necessarily requires a finding that the perpetrator "manifest[ed] an intention unlawfully to kill a human being." (CALJIC No. 8.11.)

Second, defendant argues that former CALJIC No. 300, which instructs that "[e]ach principal, regardless of the extent or manner of [his] participation [in the crime] is equally guilty[,]" allowed the jury to improperly "impute the direct perpetrator's mens rea to any principal . . . involved in the commission of the" murder. We disagree.

It is true that after defendant's trial, our Supreme Court noted that the "equally guilty" language in former CALJIC No. 3.00 "could be misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the instruction to preclude such a finding." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433 (*Bryant*); *People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 918.) However, even if the jury had been misled by the language in CALJIC No. 3.00,

10

that error would not render defendant eligible for relief under section 1172.6.

Both the law in effect at the time of defendant's trial (see, e.g., *McCoy, supra,* 25 Cal.4th at p. 1118) and the instructions given to the jury (e.g., CALJIC No. 3.01) already required that an aider and abettor to a murder must personally have malice. The allegedly misleading language in former CALJIC No. 3.00 did not transform defendant's case into a prosecution based on a "'theory under which malice is imputed to a person based solely on that person's participation in a crime'" under section 1172.6, subdivision (a). (*Burns, supra,* 95 Cal.App.5th at p. 865.)

As the *Burns* court explained, "[t]he problem with the 'equally guilty' language . . . was not that it permitted the jury to rely on a now-invalid theory of criminal liability, but that it may have misled the jury as to what was *then* required to convict [the defendant]. Use of the 'equally guilty' language in the instruction provided at [defendant's] trial created a potential issue of instructional error, but it did not operate to offer the jury a theory of legal liability that can no longer support a conviction for murder as a result of the recent statutory changes." (*Burns, supra,* 95 Cal.App.5th at pp. 868–869.)

Defendant urges us to disregard *Burns* and interpret section 1172.6 to provide relief for any error that could have resulted in the jury imputing malice to defendant. But even if we adopted defendant's statutory interpretation, his argument would not prevail.

Our Supreme Court has previously rejected the argument that the "equally guilty" language used in former CALJIC No. 3.00 allows a jury to convict an aider and abettor of first degree murder based on the perpetrator's culpability without

11

considering the aider and abettor's own mental state.  (*People v. Johnson* (2016) 62 Cal.4th 600, 638, 641 (*Johnson*).)  The court noted that the instruction "generally stated a correct rule of law" in that "'[a]ll principals, including aiders and abettors, are "equally guilty" in the sense that they are all criminally liable.'"  (*Id.* at p. 640, quoting *Bryant, supra*, 60 Cal.4th at p. 433; see also *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1165 [t]he "'equally guilty'" language is "generally correct in all but the most exceptional circumstances[]" (italics omitted)].)

Furthermore, in cases where the jury is properly instructed on the requirements for establishing aider and abettor liability, "there [i]s no reasonable likelihood the jurors would have understood the 'equally guilty' language . . . to allow them to base defendant's liability for first degree murder on the mental state of the actual shooter, rather than on defendant's own mental state in aiding and abetting the killing."  (*Johnson, supra*, 62 Cal.4th at p. 641; *People v. Estrada* (2022) 77 Cal.App.5th 941, 947.)

Here, the jury was not only instructed on the intent requirements for aiding and abetting liability (CALJIC No. 3.01), but also received instructions requiring it to consider each codefendant's guilt separately (CALJIC No. 17.00) and find an intent to kill on the part of each codefendant individually (CALJIC No. 3.31).  We decline to assume that the jurors misunderstood or misapplied all of these instructions because of two words in former CALJIC No. 3.00.  (*Bryant, supra*, 60 Cal.4th at p. 433 [the effect of ""jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction""]; *People v. McKinnon* (2011) 52 Cal.4th 610, 670 ["We 'credit jurors with

12

intelligence and common sense' [citation] and presume they generally understand and follow instructions"].)

 <u>Lastly</u>, defendant turns to his attempted murder convictions.  He contends that the Legislature intended for section 1172.6 to provide resentencing relief for persons convicted of attempted murder based on any theory of imputed malice.  Any contrary interpretation of the law, he argues, would controvert legislative intent and trigger serious equal protection concerns.  But even accepting these contentions, defendant is still ineligible for resentencing as a matter of law.  As we have already concluded, the jury instructions given in this case simply did not permit the jury to convict defendant of murder or attempted murder under any theory of imputed malice.

## DISPOSITION

 The order is affirmed.

 <u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
   ASHMANN-GERST


We concur:



_____, J.
CHAVEZ



_____, J.
HOFFSTADT


13